The TRAVELERS INSURANCE COMPANY, Appellant,

v.

C. E. DUNN, Appellee.

No. 15637.

United States Court of Appeals Fifth Circuit.

Jan. 6, 1956.

Rehearing Denied Feb. 2, 1956.

---

**630**

. Pinkney Grissom, David M. Kendall, Jr., Thompson, Knight, Wright & Simmons, Dallas, Tex., for appellant.

Joe V. Moore, Virgil R. Sanders, Dallas, Tex:, for appellee.

Before HUTCHESON, Chief Judge, and HOLMES and RIVES, Circuit Judges.

RIVES, Circuit Judge.

Appellee Dunn sued appellant, The Travelers Insurance Company, seeking to set aside a compromise settlement agreement executed by the parties and approved, without prior notice to appellee, by the Industrial Accident Board of the State of Texas.[1] When appellee received from the Industrial Accident Board notice that it had approved the compromise settlement agreement, together with appellant's check in the amount of $150.00, he promptly returned the check to the appellant and instituted this suit to set the agreement aside.

On oral findings of fact[2] the district court entered judgment setting aside

---

[1] Pursuant to the provisions of Article 8307, § 12, Revised Civil Statutes of Texas:

"Where the liability of the association or the extent of the injury of the employe is uncertain, indefinite or incapable of being satisfactorily established, the board may approve any compromise, adjustment, settlement or commutation thereof made between the parties."

[2] "After having heard the testimony, Gentlemen, I find these to be the facts:

"That Mr. Dunn was injured while in the regular course of his employment for his employer, who has insurance under the Workmen's Compensation Act of the State of Texas [Vernon's Ann.Civ.St. art. 8306 et seq.].

"That he sought the services of competent physicians, and, off and on he has worked since that time.

"I also find that when he has worked he has not been able to hold a job because of the pain he has had, and, has gone from one position to another.

"I find that he has been a laboring man; that he finished the eighth grade in school.

"I find that he cannot read well without glasses, and, that he is farsighted.

"I find that what he has testified to here, bearing in mind that I, myself, am the judge of the facts, and, credibility of the witnesses, that he has testified truly, and, I do not think that he understood the settlement agreement which he signed. He relied upon the defendant's agent as to its contents, and, he says that he thinks the agent told him that it was a compromise settlement for one hundred and fifty dollars for six weeks, that he, the agent, had discovered he owed him, did owe him; for compensation at twenty-five dollars per week, and, he did not know he was signing, nor could he read, nor did he read. the compromise settlement agreement, and, that when the check for

and holding for nought the compromise settlement agreement.

Appellee's doctor testified that his injury had totally disabled him, that a surgical operation would be necessary, and he declined to give an opinion as to the prospects for complete recovery from the operation, indicating that that was a matter for a surgeon.

The doctor employed by appellant testified that he treated appellee for a sprained back; that, after three treatments, he showed some improvement, and that when he did not come back he assumed that he got all right; that "I told him I thought he could get well without surgery."

Appellee testified that appellant's doctor told him he would be all right in a few days; that appellant's claim adjuster came out with some papers for him to sign, told him that he had checked up and that appellee had been off six weeks and that he wanted to pay him six weeks' compensation; that he did not realize that the writing was a compromise settlement agreement, under which that was all he was going to get. He further testified that he could not read without glasses, that he did not have any glasses at that time, and told the adjuster that he could not read the paper. "Q. What did he tell you it said? A. He said, 'Oh, this is just six weeks' compensation you were off that you will get a check for $150.00 in a few days', if nothing didn't turn up." On cross-examination he testified:

"Now, how much of that did Mr. Masters read to you and how much he didn't read to you?

"A. He didn't read that where I agreed to sign my compromise for $150.00.

"Q. He didn't read the last sentence: 'I agree to compromise my

one hundred and fifty dollars was received, together with the statement, he immediately refused it, took it to his attorney, and, it was returned to the company.

claim in the amount of $150.00'; you say he didn't read that?

"A. He didn't read that.

"Q. Did he read the rest of it?

"A. I don't know whether he did or not, I couldn't read it, I was just taking his word for what he told me."

The adjuster testified in substance:

"I then prepared the compromise statement and had Mr. Dunn to read the statement fully. He never did say one word about being unable to read. In fact, he was fully able to read it and write his name in the indicated space on the contract, which he did. I told him at the time that the statement was a full and final agreement and that he would receive one hundred and fifty dollars in full payment of his claim, and that in addition all doctor bills which he had incurred would be paid by The Travelers Insurance Company. * * * Actually, I could not testify whether or not I read it to him or he read it. If I did read it to him he had a copy, and which he could follow. Two copies of the statement were prepared and he had a copy which he could follow."

It is true that the findings of the trial court are not as explicit or detailed as might be desired, but they should be liberally construed in support of the judgment. Triangle Conduit & Cable Co. v. Federal Trade Commission, 7 Cir., 168 F.2d 175, 179. The testimony of the appellee and that of the appellant's claim adjuster are diametrically opposed. The trial court found that the appellee "has testified truly." If so, if appellee had a meritorious claim for compensation on account of a serious injury which was settled for a small sum through the efforts of appellant's claim

"I believe, Gentlemen, that it is right that this case should be ruled by decree for the plaintiff, setting aside this agreed settlement. I think that is proper."

adjuster by a false representation relied upon by appellee that the settlement was simply *for the six weeks' compensation during which appellee had been off from work*, then, even according to the authorities relied upon by the appellant,[3] the settlement agreement should be set aside. We find no error in the record and the judgment is

Affirmed.

---

**3.** Pacific Employers Ins. Co. v. Brannon, 150 Tex. 441, 242 S.W.2d 185; Brannon v. Pacific Employers Ins. Co., 148 Tex. 289, 224 S.W.2d 466.