**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 10, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

NESTER COMMERCIAL ROOFING,
INC.,

       Plaintiff-Appellant,

v.

AMERICAN BUILDERS AND
CONTRACTORS SUPPLY CO. INC.;
MULE-HIDE PRODUCTS CO. INC.,

       Defendants-Appellees.

No. 06-6290
(D.C. No. CIV-05-1169-M)
(W.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **PORFILIO**, **ANDERSON**, and **BALDOCK**, Circuit Judges.

---

This diversity-jurisdiction lawsuit stems from Nester Commercial Roofing,

Inc.'s purchase of roofing material from American Builders and Contractors

Supply Co., Inc. (ABC). The material, Mule-Hide A-320, was manufactured by

Mule-Hide Products, Inc., a company affiliated with ABC. After Nester applied

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

the Mule-Hide A-320 to the roofs of several stores owned by one of its clients, the roofs leaked. Nester repaired the roofs with a different material, then sued ABC and Mule-Hide. ABC and Mule-Hide defended on the ground that Nester had failed to follow the application directions for the Mule-Hide A-320, and ABC counterclaimed for sums Nester had refused to pay for the replacement roofing material. The jury decided in favor of Nester on its breach-of-express-warranty claim and for ABC on its counterclaim. Nester appeals several trial rulings. We have jurisdiction under 28 U.S.C. § 1291, and we AFFIRM.

## *Disclaimer of Implied Warranties*

The district court found effective the disclaimers contained on the buckets of Mule-Hide A-320 and granted defendants a judgment as a matter of law on Nester's claims of breaches of the implied warranties of fitness for a particular purpose and merchantability. Nester argues the court erred in excluding the implied warranties claims because the disclaimer language was not "conspicuous," as required by Oklahoma law. It further argues that the question of conspicuousness should have been decided by the jury. "We review de novo the grant of a judgment as a matter of law." *Weaver v. Chavez*, 458 F.3d 1096, 1099 (10th Cir. 2006). Because this matter was brought under the district court's diversity jurisdiction, we apply the law of the forum state. *Blanke v. Alexander*, 152 F.3d 1224, 1228 (10th Cir. 1998).

The Oklahoma Uniform Commercial Code establishes the implied warranties of merchantability and fitness for a particular purpose. *See* Okla. Stat. tit. 12A, § 2-314(1) ("Unless excluded or modified (Section 2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."); *id.*, § 2-315 ("Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose."). As the statutes plainly state, the implied warranties may be excluded or modified: for the implied warranty of merchantability, "the language must mention merchantability and in case of a writing must be conspicuous," and for the implied warranty of fitness for a particular purpose, "the exclusion must be by a writing and conspicuous." *Id.*, § 2-316(2). Whether a disclaimer is conspicuous is a question of law for the court. *See id.*, § 1-201(b)(10). Thus, the district court did not err by not submitting conspicuousness to the jury.

The buckets of Mule-Hide A-320 contained the following language in black ink, just underneath a graphic illustrating the warning "DO NOT FREEZE":

Limited Warranty
All products sold are subject to the following limited warranty:
MULE-HIDE PRODUCTS CO., INC. ("SELLER") WARRANTS
FOR A PERIOD OF ONE (1) YEAR FROM DATE OF DELIVERY
THAT THE PRODUCT IS FREE FROM MANUFACTURING

DEFECTS.  THE SELLER MAKES NO OTHER
REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS
OR IMPLIED, IN FACT OR IN LAW, INCLUDING WITHOUT
LIMITATION THE WARRANTY OF MERCHANTABILITY OR
THE WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE,
OTHER THAN THE LIMITED WARRANTY SET FORTH ABOVE.
Every claim under this warranty shall be deemed waived unless made
in writing and received by the Seller within thirty (30) days of the
date that the defect to which each claim relates is discovered or
should have been discovered.  No person is authorized to alter this
warranty orally.

Aplt. App. at 32.[1]  Nester contends this language is not conspicuous because it is in black, and other language on the bucket "is in red and far more easily noticed." Aplt. Br. at 12.  It also points out "that language is placed among various other non-application related words." *Id.* at 12-13.

The Oklahoma Uniform Commercial Code defines "conspicuous" as "so written, displayed, or presented that a reasonable person against whom it is to operate ought to have noticed it."  Okla. Stat. tit. 12A, § 1-201(b)(10).  In *Collins Radio Co. v. Bell*, the Oklahoma Court of Civil Appeals stated that there are many factors relevant to determining conspicuousness, "including location in the contract, type face and type size, variation in the printing, length of the contract, and the sophistication of the buyer."  623 P.2d 1039, 1050 (Okla. Civ. App. 1980).  In that case, the court found the disclaimer was conspicuous:

---

[1]     It appears the trial exhibit displayed an express warranty slightly different than that set forth on the buckets Nester actually received.  Aplt. App. at 57. Because the language excluding the implied warranties was the same on all the buckets, any differences in other parts of the warranty paragraph are not material to our analysis.

It appears on the reverse side of a single sheet contract. It appears in all capital letters in a separate paragraph and is the only language in capitals on the page save the section headings and the limitation of remedies clause. Reference is made on the front to the terms of the contract appearing on the back. Although the reference is in smaller type than all the other terms on the front page of the contract, it is easily read, amply spaced, set off by horizontal lines, and appears just above the space provided for the buyer's signature.

*Id.* at 1051; *cf. P.E.A.C.E. Corp. v. Okla. Nat. Gas Co.*, 568 P.2d 1273, 1278 (Okla. 1977) (finding disclaimer not conspicuous, in part, because it was not in capital letters, a different size type, or a different color).

As a matter of law, the disclaimer on the Mule-Hide A-320 buckets is conspicuous. It is expressed in a separate paragraph entitled "Limited Warranty," and the exclusion of implied warranties is in all-capital letters. Although it is entirely in black and in smaller text than other labeling on the bucket, it "is easily read" and "amply spaced," and there is not a large amount of other text on the bucket. *Collins Radio Co.*, 623 P.2d at 1051. Further, Nester, as a commercial roofing business represented by an experienced roofer/businessman, is a sophisticated buyer of products such as Mule-Hide A-320. The district court did not err in excluding Nester's implied-warranty claims.[2]

---

[2] In this section of its opening brief, Nester also remarks upon the district court's decision to limit express warranty damages. Aplt. Br. at 8, 13. But Nester does not set forth an argument on the issue, so the matter is waived. *See Abercrombie v. City of Catoosa*, 896 F.2d 1228, 1231 (10th Cir. 1990).

*Breach of Contract*

Nester also contends the district court erred in not allowing it to proceed to the jury with a separate breach of contract claim against ABC. Nester argues that its principal, Bill Nester, explained to ABC's salesman the circumstances of the jobs and the salesman recommended that Nester use the Mule-Hide A-320; that the Mule-Hide A-320 actually was inappropriate for the circumstances; and that Nester was injured by using the Mule-Hide A-320 because the client no longer uses Nester for its roofing jobs. The district court stated that the breach of contract claim would not go to the jury because in its pre-trial filings Nester had not made any distinction between ABC and Mule-Hide, instead referring to defendants collectively. As with the implied warranties claim, our review is de novo and relies on Oklahoma law.

Even if the district court erred in its rationale for not allowing the claim, it was not reversible error. These facts do not establish a claim for breach of contract that is separate or distinguishable from claims of breach of the implied warranty of merchantability and implied warranty of fitness for a particular purpose. The facts described are a quintessential example of circumstances underlying a claim for breach of those implied warranties. *See, e.g., Am. Fertilizer Specialists, Inc. v. Wood*, 635 P.2d 592, 594-95 (Okla. 1981). And Nester could not pursue a breach-of-implied-warranty claim against ABC for the same reason it could not pursue such claims against Mule-Hide; namely, an

effective disclaimer. ABC's purchase contract contains a disclaimer of the implied warranties of merchantability and fitness for a particular purpose. Aplee. Supp. App. at 161. The disclaimer appears on the reverse of a one-page purchase agreement, which contains on the first page a reference to the terms on the reverse; it is set forth in a separate paragraph, it is easily read, and amply spaced; and the disclaimer portion of the paragraph is printed in all-capital letters, unlike any other text on the page save the heading. *Id.* Under the principles of *Collins*, we find the disclaimer to be conspicuous. *See* 623 P.2d at 1051. Allowing Nester to present its proposed "breach of contract" claim against ABC would eviscerate the disclaimer of implied warranties. Accordingly, there is no basis for reversing the district court's decision not to allow the claim to proceed.[3]

*Expert Testimony*

Finally, Nester contends the district court erred in excluding the testimony of its certified public accountant as to Nester's lost profits. The district court determined that the CPA could provide only non-expert testimony because he had not been listed as an expert witness or provided an expert report.[4] We review the

---

[3] Further, to the extent Nester sought to pursue this claim to recover damages for lost profits, we note that ABC's purchase agreement contains a disclaimer of consequential and incidental damages. Aplee. Supp. App. at 161. Oklahoma law permits the limitation or exclusion of consequential damages. Okla. Stat. Ann. tit. 12A, § 2-719(3); *Collins Radio Co.*, 623 P.2d at 1051.

[4] It is not clear whether the district court precluded the CPA's expert testimony because Nester had not declared him as an expert witness, because it

(continued...)

district court's decision to admit or exclude evidence, including expert testimony, for an abuse of discretion. *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 968 (10th Cir. 2001). "A trial court's decision will not be disturbed unless this Court has a definite and firm conviction that the trial court has made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Id.* at 968-69 (quotation and alterations omitted).

Nester argues that "[t]he underlying question as to whether Mr. Chain should have been allowed to offer additional testimony in his role as an acting C.P.A. is whether he was retained in anticipation of litigation." Aplt. Br. at 14. Nester is correct that, because the CPA was not retained or specially employed to provide expert testimony, Federal Rule of Civil Procedure 26(a)(2)(B) did not require him to provide an expert report. *See Watson v. United States*, 485 F.3d 1100, 1107 (10th Cir. 2007).

It does not follow, however, that Nester could also neglect to identify the CPA as an expert witness if it wished him to testify to matters involving

_____

[4](...continued)
had not provided an expert report, or for both reasons. *See* Aplt. App. at 66 (in summarizing its prior ruling for the record, the court stated, "I left it up to the Plaintiff's counsel to ask appropriate questions that would not elicit expert testimony, because Mr. Chain was not declared as an expert witness"); *id.* at 48-49 (in objecting to expert testimony during trial, defense counsel stated, "He could testify as to the tax returns he prepared, but would not be allowed to give expert testimony because he had not been listed as an expert, had not provided an expert report. I understood that to be the ruling on the motion in limine."). In an abundance of caution, we analyze the issue under both reasons.

"scientific, technical, or other specialized knowledge." Fed. R. Evid. 702.

Federal Rule of Civil Procedure 26(a)(2)(A) states "a party shall disclose to other parties the identity of *any person* who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence" (emphasis added). This rule does not distinguish between expert witnesses retained in anticipation of litigation and other expert witnesses. As the district court recognized, the CPA need not be listed as an expert to testify to his personal knowledge of events relevant to the litigation. *See United States v. Caballero*, 277 F.3d 1235, 1247 (10th Cir. 2002) ("[W]itnesses need not testify as experts simply because they are experts–the nature and object of their testimony determines whether the procedural protections of Rule 702 apply."). But if Nester wished its CPA to give expert testimony, it should have disclosed him as an expert witness. *See Bank of China, New York Branch v. NBM LLC*, 359 F.3d 171, 182 (2d Cir. 2004); *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 756-57 (7th Cir. 2004); *compare Watson*, 485 F.3d at 1108 n.5 (noting that plaintiff had the opportunity to depose the expert witness with "full knowledge that the government intended to call him as an expert witness"). Accordingly, the district court did not abuse its discretion by restricting counsel's ability to elicit expert testimony from Nester's CPA. *See* Fed. R. Civ. P. 37(c)(1) ("A party that without substantial information fails to disclose information required by Rule 26(a) . . . is not, unless such failure is harmless, permitted to use as evidence at trial . . . any . . . information not so

disclosed."); *Sims v. Great Am. Life Ins. Co.*, 469 F.3d 870, 894-95 (10th Cir. 2006) (holding that district court properly excluded expert witness who was not timely designated); *Musser*, 356 F.3d at 757-60 (holding that district court did not abuse its discretion in excluding expert testimony because party lacked substantial justification for disclosing witnesses under Rule 26(a)(1) but not Rule 26(a)(2)).

The judgment of the district court is AFFIRMED.

Entered for the Court


Bobby R. Baldock
Circuit Judge